**Helen G. FRANCIS, Plaintiff,**

v.

**The BLAIKIE GROUP, Defendant.**

**No. 04 Civ. 6710(VM).**

United States District Court,
S.D. New York.

June 6, 2005.

Helen Francis, Montclair, NJ, Pro se.

Louis Pechman, Berke–Weiss & Pechman LLP, New York City, for Defendant.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Helen G. Francis ("Francis"), *pro se,* brought this action against defendant The Blaikie Group claiming violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA"), and the Employee Retirement Income Security Act, 29 U.S.C. § 1001 ("ERISA"). The Blaikie Group has moved, pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), to dismiss the Complaint for failure to state a claim upon which relief can be granted.[1] Specifically, The Blaikie Group argues that Francis's claims are barred by the applicable statutes of limitations.[2] Because the Court finds that Francis's claims are time-barred, The Blaikie Group's motion is granted.

## I. BACKGROUND [3]

The Blaikie Group employed Francis as a comptroller for approximately three and

---

1. The Blaikie Group stated in its Notice of Motion that it was filing a motion pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") as well as Rule 12(b)(6). In its Memorandum of Law in Support of Defendant's Motion to Dismiss, though, The Blaikie Group addresses only the Rule 12(b)(6) motion, without mentioning Rule 12(b)(1) or the question of the Court's jurisdiction to hear Francis's case, the subject of a Rule 12(b)(1) motion. Therefore, the Court addresses only the Rule 12(b)(6) motion.

2. Defenses based on statutes of limitations are properly brought under Rule 12(b)(6) as motions to dismiss for failure to state a claim on which relief can be granted. *See Ghartey v. St. John's Queens Hosp.,* 869 F.2d 160, 162 (2d Cir.1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss. Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter.") (citations omitted).

3. The following factual summary derives from the uncontested representations of the parties in their submissions. Where facts are disputed, it is so indicated.

a half years, beginning on April 13, 1992.[4] Francis alleges that, during that period, Colette Blaikie ("Ms.Blaikie"), an office manager at The Blaikie Group, "undertook a campaign of harassment, abuse, and unequal treatment of [Francis] in the terms and conditions of her employment" based on Francis's race and age. (Letter dated February 7, 1996 to Donald Blaikie from Rabner, Allcorn, Baumgart, Ben–Asher & Tucker[5] ("Rabner Letter") at 2.) Francis claims that she notified The Blaikie Group's president, Donald Blaikie ("Mr.Blaikie"), of Ms. Blaikie's alleged mistreatment of her and that he refused to take any remedial action. According to Francis, Ms. Blaikie's mistreatment of her and Mr. Blaikie's refusal to intervene resulted in constructive termination of Francis's employment with The Blaikie Group.

Francis also alleges that The Blaikie Group violated ERISA and discriminated against her with respect to her compensation.[6] Specifically, she claims that The

---

4. The parties dispute Francis's date of termination. The Blaikie Group claims that Francis's termination date was October 10, 1995, (*see* Memorandum of Law in Support of Defendant's Motion to Dismiss dated January 21, 2005 ("Def.'s Mem. in Supp.") at 2), while Francis claims it was November 13, 1995, (*see* Opposing Motion dated February 10, 2005 ("Pl.'s Mem. in Opp.") at 2). The Court has supplied page numbers for Francis's memorandum in opposition to The Blaikie Group's motion to dismiss, as the version that Francis submitted to the Court is not continuously numbered.

5. The copy of the Rabner Letter that Francis submitted to the Court does not contain a signature line or otherwise indicate the specific identity of the author. It is written on the letterhead of the above-mentioned law firm.

6. The Complaint in this action does not itself contain factual allegations, instead incorporating by reference allegations contained in other documents. The following allegations are derived from Francis's EEOC Charge of Discrimination Form dated April 12, 2004, including a one-page attachment, (the "EEOC Charge"), and from the Rabner Letter, both of which are attached to the Complaint and incorporated therein by reference.

In addition, there is some ambiguity as to which claims Francis intends to incorporate by reference into the Complaint. The Complaint filed by Francis in this case is a standard form designed exclusively for cases brought under Title VII, the ADEA, or the Americans with Disabilities Act of 1990. One section of the Complaint provides a check list on which the plaintiff is instructed to check off the "discriminatory conduct" of which he or she complaints. In that section, Francis checked off the following items: "Termination of my employment," "Unequal terms and conditions of my employment," "Retaliation," and "Other acts." (Complaint at 3.) On the line on which the plaintiff is instructed to specify the nature of the "other acts" complained of, Francis wrote "as stated in document," (*id.*) but did not specify the document to which she referred. There are several documents attached to the Complaint. One of them is the Rabner Letter, which accuses The Blaikie Group of breach of contract, as well as discrimination and ERISA violations. (Rabner Letter at 1, 6.) Neither Francis nor The Blaikie Group addresses breach of contract claims in their motion papers.

Due to the vagueness and brevity of Francis's pleadings, the Court is not able to read a breach of contract claim into Francis's Complaint. Francis does not, for instance, specify information necessary for the Court to determine whether or not it would have an independent basis for jurisdiction over such a claim. The only apparent independent basis for federal jurisdiction over any breach of contract claims that Francis may wish to assert is the diversity of the parties. Francis does not, however, specify the monetary sum in controversy, which would have to exceed $75,000 in order for the Court to have diversity jurisdiction over the contract claims. Therefore, the Court declines to interpret Francis's complaint as pleading any breach of contract claims.

Francis may file a separate action for any breaches of contract she believes The Blaikie Group to have committed. To the extent that such an action would be based on the same facts alleged in the instant case, however, it

Blaikie Group: (1) failed to contribute to her 401K account for the years 1992 and 1993; (2) made insufficient contributions to her 401K account for the years 1994 and 1995; (3) failed to pay her an agreed-upon salary increase for 1995; (4) failed to pay her a bonus for 1995; (5) failed to timely effectuate a "profit sharing" agreement; (6) failed to timely effectuate a salary increase that was promised to commence in October 1993; (7) failed to pay her overtime to which she was entitled; and (8) "compensated [her] on a discriminatory basis throughout her employment." (*Id.* at 2, 4–6.)

Francis first contacted the Equal Employment Opportunity Commission (the "EEOC") in December of 2003 regarding a potential claim for discrimination against The Blaikie Group. Francis filed a charge of discrimination with the EEOC on April 16, 2004. The EEOC dismissed Francis's charge on the grounds that it was not timely filed. By notice dated April 21, 2004 (the "EEOC Notice"), the EEOC informed Francis of its dismissal of her charge and of her right to file a lawsuit against The Blaikie Group on the basis of her charge within ninety days of her receipt of the EEOC Notice. Francis states

that she received the EEOC Notice, which was postmarked April 22, 2004, on April 24, 2004. (*See* Pl.'s Mem. in Opp. at 2.) Francis filed her Complaint against Blaikie with the Court on July 21, 2004, eighty-eight days after the alleged receipt date.

## II. STANDARD OF REVIEW

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party. *See Securities Investor Protection Corp. v. BDO Seidman, LLP,* 222 F.3d 63, 68 (2d Cir.2000). Dismissal of a case under Rule 12(b)(6) "is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Raila v. United States,* 355 F.3d 118, 119 (2d Cir. 2004) (citation omitted). In addition, because Francis is a pro se plaintiff, her "pleadings should be read liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Jafri v. Rosenfeld,* No. 04 Civ. 2457, 2005 WL 991784, at *3 (S.D.N.Y. Apr. 26, 2005) (quoting

would likely be barred by the statute of limitations. The applicable statute of limitations for breach of contract claims would be determined by either New York or New Jersey law, as, according to the record before the Court, Francis resides in New Jersey and The Blaikie Group is based in New York. Both New York and New Jersey apply a six-year statute of limitations to breach of contract claims. *See* N.Y. C.P.L.R. § 213(2); N.J. Stat. Ann. § 2A:14–1. Under New York law, the limitation period generally begins to run at the time that the alleged breach occurs. *See Reznor v. J. Artist Mgmt., Inc.,* 365 F.Supp.2d 565, 578 (S.D.N.Y.2005) ("Under New York law, breach of contract claims must be brought within six years of the alleged breach, regardless of whether plaintiff was aware at the time of the breach that he had a cause of action.") (citing *Ely–Cruikshank Co. v. Bank of Montre-*

*al,* 81 N.Y.2d 399, 599 N.Y.S.2d 501, 615 N.E.2d 985 (1993)). Under New Jersey law, the limitation period generally begins to run at the time that the cause of action accrues. *See* N.J. Stat. Ann. § 2A:14–1. A cause of action based on a breach of contract claim usually accrues at the time of the alleged breach. *See Amland Properties Corp. v. Aluminum Co. of America,* 808 F.Supp. 1187, 1190 (D.N.J.1992) ("Ordinarily, the statute of limitations for an action begins to run when all the elements of the cause of action are present or, more plainly, from the moment of the wrong.") (internal quotation marks and citation omitted). Therefore, absent some basis for extending or tolling the statute of limitations, any breach of contract claims arising from the events alleged in the instant case, the last of which occurred in late 1995 or early 1996 at the latest, would be time-barred.

*McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999)).

## III. DISCUSSION

### A. TITLE VII AND ADEA CLAIMS

"Under both Title VII and the ADEA, a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir.2001) (citations omitted). "An employment discrimination claim must be filed with the EEOC within 300 days of the alleged discrimination in a state, like New York, with a fair employment agency." *Id.* (citing 42 U.S.C. § 2000e–5(e); *Ford v. Bernard Fineson Dev. Ctr.*, 81 F.3d 304, 307 (2d Cir.1996)).[7] "[D]iscriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court." *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325 (2d Cir. 1999) (quoting *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir.1998) (internal quotation marks omitted)).

 "The 300–day period starts to run when the claimant receives notice of the allegedly discriminatory act, not when the allegedly discriminatory decision takes

effect." *Moorehead v. N.Y.C. Transit Auth.*, No. 02 Civ. 8038, 2005 WL 31950, at *2 (S.D.N.Y. Jan.6, 2005) (citing *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *DeSalvo v. Metro. Opera Ass'n Inc.*, No. 96 Civ. 8292, 1997 WL 337517, at *2 (S.D.N.Y. June 19, 1997); *Miller v. IT & T Corp.*, 755 F.2d 20, 23 (2d Cir.1985)). The latest date on which Francis could claim to have received notice of an allegedly discriminatory act is the date on which she allegedly should have received her bonus for the year 1995, well over 300 days prior to the date Francis filed her EEOC charge in 2003.

 Francis claims, however, that The Blaikie Group's alleged violations continue through the present because The Blaikie Group still has not paid her the funds to which she claims to be entitled. (*See* Pl.'s Mem. in Opp. at 12.) "Under the continuing violation doctrine, 'a plaintiff who files a timely EEOC charge about a particular discriminatory act committed in furtherance of an ongoing policy of discrimination extends the limitations period for all claims of discriminatory acts committed under that policy even if those acts, standing alone, would have been barred by the statute of limitations.'" *Feldman v.*

---

**7.** 42 U.S.C. § 2000e–5(e)(1) provides that, "in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred." Although Francis did not directly institute proceedings with a state or local agency before filing her charge with the EEOC, the 300–day filing period nevertheless applies to her EEOC charge. "If a Title VII claim is filed initially with the EEOC instead of a state agency in a state with a Work

Sharing Agreement like New York's, the claim is nonetheless deemed filed 'initially' with the state agency.... Consequently, when the Title VII claim is filed with the EEOC first, a New York complainant has 300 days to make such a filing." *Favia v. N.Y.C. Bd. of Educ.*, 99 Civ. 4608, 2000 WL 1229885, at *2 n. 2 (S.D.N.Y. Aug.29, 2000) (citing *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 327 (2d Cir.1999)); *see also Govia v. Century 21, Inc.*, 140 F.Supp.2d 323, 325 n. 1 (S.D.N.Y.2001) ("[P]ursuant to provisions of a Work Sharing Agreement in effect between the New York State Division of Human Rights ... and the EEOC, the cross-filing is deemed to have constructively occurred whenever a New York complainant files with either agency.") (citations omitted).

*Nassau County,* 349 F.Supp.2d 528, 536 (E.D.N.Y.2004) (quoting *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907 (2d Cir.1997)). Thus, in order for the continuing violation doctrine to apply, "at least one act of discrimination must occur within the applicable 300–day statutory time period." *De Brasi v. Plaza Hotel,* No. 03 Civ. 5159, 2005 WL 1107058, at *3 n. 3 (S.D.N.Y. May 9, 2005) (citing, *inter alia,* *AMTRAK v. Morgan,* 536 U.S. 101, 117, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)).

Although The Blaikie Group has continued not to pay Francis the sums to which she claims to be entitled, that continuing non-payment is better classified as "the mere continuation of a discriminatory act's effects," *Ahmed v. Samson Mgt. Corp.,* No. 95 9530, 1996 WL 183011, *4 (Apr. 17, 1996) (quoting *Association Against Discrimination v. City of Bridgeport,* 647 F.2d 256, 274 (2d Cir.1981) (internal quotation marks omitted)), rather than as a separate discriminatory act taken pursuant to a discriminatory policy. Therefore, the fact that the alleged original non-payment continued to occur within the 300 days prior to Francis's filing of the EEOC charge does not extend the filing period for acts committed prior to the commencement of that period. Other than continued non-payment, Francis does not claim that any other allegedly discriminatory acts occurred within the 300 days prior to her filing of the EEOC Charge. As result, even if the acts of which Francis complains were taken pursuant to a discriminatory policy, they would still be time-barred.

■ Although "filing a timely charge of discrimination with the EEOC ... is subject to waiver, estoppel, and equitable tolling," *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), Francis has not alleged, nor does the Court find, an adequate basis for relief from the limitation period on any of these grounds. Francis has not alleged that The Blaikie Group waived the limitation period. In order for a defendant to be estopped from asserting a statute of limitations defense, the plaintiff must allege "that some 'conduct' by the defendant 'caused him to delay bringing his [claim].'" *Dillman v. Combustion Eng'g, Inc.,* 784 F.2d 57, 60–61 (2d Cir. 1986). Francis has not pointed to any such conduct by The Blaikie Group with respect to her Title VII or ADEA claims.

■ Finally, the doctrine of equitable tolling applies "'only in rare and exceptional circumstances,' where 'a party has been prevented in some extraordinary way from exercising his rights.'" *Sherlock v. Wal–Mart Store # 2156,* No. 04–CV–1180, 2005 WL 1027532, at *2 n. 4 (E.D.N.Y. May 2, 2005) (quoting *Johnson v. Nyack Hosp.,* 86 F.3d 8, 12 (2d Cir.1996)). "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli–Edelglass v. New York City Trans. Auth.,* 333 F.3d 74, 80–81 (2d Cir.2003) (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan,* 288 F.3d 506, 512 (2d Cir.2002)).

■ Francis claims in her EEOC charge that she "was not aware that she could have filed [her]' charges through EEOC until 2003." (EEOC Charge ¶ 5.) She suggests that the reason for this lack of awareness was the fact that "[t]he lawyer who handled [her] ·case was not licensed for New York State" and that she "was led to believe that he was in a position to follow through on the entire case." (*Id.*) In addition to seeking legal assistance from Mr. Ben–Asher, Francis attempted to

retain three other attorneys to assist her in filing claims against The Blaikie Group. Francis indicates, though does not explicitly state, that the next three attorneys she contacted, during the years 1996 through 2003, impeded her ability to file a charge with the EEOC by losing and/or failing to return the materials she had submitted to them in support of her claim. (*See* Pl.'s Mem. in Opp. at 28.) Thus, Francis appears to assert two bases for equitable tolling of the statute of limitations: first, that she was not aware that she could file a charge with the EEOC until 2003 and, second, that she would have been impeded from filing such a charge even if she had been aware that she could do so by various attorneys' failure to return her documents to her.

Neither Francis's ignorance of her ability to file a charge with the EEOC nor her attorneys' alleged failure to return her documents is a sufficient basis for tolling the limitation period. The Second Circuit has held that the 300–day EEOC filing period is

> not tolled or delayed pending the employee's realization that the conduct was discriminatory unless the employee was actively misled by his employer, he was prevented in some extraordinary way from exercising his rights, or he asserted his rights in the wrong forum.... An 'extraordinary' circumstance permitting tolling of the time bar on equitable grounds might exist if the employee could show that it would have been impossible for a reasonably prudent person to learn that his discharge was discriminatory.

*Miller*, 755 F.2d at 24. Although this holding explicitly addresses a petitioner's lack of awareness that certain conduct is discriminatory, it applies with equal force to a petitioner's failure to realize that he or she must file a charge with the EEOC within a given period of time. In *Cheng v. Metropolitan Life Ins. Co.*, No. 94 CIV. 0808, 1995 WL 37843 (S.D.N.Y. Jan.31, 1995), for instance, another court in this District applied *Miller* to reject a petitioner's claim that the statute of limitations for an ADEA claim should be tolled because the petitioner "was 'totally unaware' that ADEA had a statute of limitations." 1995 WL 37843, at *2. According to that court, equitable tolling of the limitation period on the basis of a petitioner's ignorance of EEOC filing requirements is warranted only if the employer " 'actively misled' [the petitioner] into thinking ... that there was no 300–day deadline in which to file his claim with the EEOC." *Cheng*, 1995 WL 37843, at *3 (quoting *Miller*, 755 F.2d at 24). Francis has not alleged that The Blaikie Group misled her with respect to the EEOC filing period. Nor has Francis alleged any facts from which the Court could reasonably infer that "it would have been impossible for a reasonably prudent person to learn" of the filing period, such that a finding of extraordinary circumstances would be warranted.

For these reasons, the Court concludes that Francis's Title VII and ADEA claims are time-barred and must be dismissed.

### B. *ERISA CLAIMS*

 Francis does not specify the section of ERISA that she believes The Blaikie Group to have violated. Her allegations are most appropriately construed as claims under § 502(a)(3) for breaches of fiduciary duties, rather than as claims under § 502(a)(1)(B) to recover allegedly due ERISA benefits.[8]

---

8. As Francis indicates in her opposition to The Blaikie Group's motion to dismiss, she

has not yet been denied ERISA benefits: "The occurrence of injury pertaining to ERISA has

The statute of limitations for breach of fiduciary duty claims under ERISA is set out in ERISA § 413:

No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part [29 USCS §§ 1101 et seq.], or with respect to a violation of this part [29 USCS §§ 1101 et seq.], after the earlier of—(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.

Francis argues that The Blaikie Group concealed information regarding her benefits, (*see* Pl.'s Mem. in Opp. at 15), bringing her claim within the six-year filing period allowed by ERISA § 413(2). She alleges that Neil Turk ("Turk"), The Blaikie Group's accountant, misinformed her regarding the percentage of funds in her 401K account to which she was entitled. (*See id.*) Even assuming that Turk or other officers of The Blaikie Group concealed from Francis facts material to her

ERISA claims, those claims are still time-barred.

"The fraud or concealment provision does not 'toll' the otherwise applicable six or three-year statute of limitations established in § 413(1) or (2); rather, it prescribes a separate statute of limitations of six years from the date of discovery." *Caputo v. Pfizer, Inc.,* 267 F.3d 181, 189 (2d Cir.2001). The six-year term begins, therefore, on the date of Francis's discovery of the allegedly concealed facts. "[A] plaintiff has 'actual knowledge of the breach or violation' within the meaning of ERISA § 413(2), 29 U.S.C. § 1113(2), when he has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act.... While a plaintiff need not have knowledge of the relevant law, he must have knowledge of all facts necessary to constitute a claim." *Id.* at 193 (citation omitted).

Francis indicates that she obtained knowledge of all facts necessary to support an ERISA claim in January 1996, when she "spoke with the Pension Company and was informed that [she] was only entitled to 40% of the funds in [her] [401K] account along with [her] personal salary deduction/contribution" and that "[t]he remaining 60% was forfeited." (Pl.'s Mem. in Opp. at 15.) Francis does not allege that she learned of any facts material to her ERISA claims later than January 1996.[9]

not yet been suffered. I will suffer injury on February 1, 2014." (Pl.'s Mem in Opp. at 12).

9. Francis points out that the final activity on her pension account occurred on April 17, 1998, six years before the date she filed the instant action. She asserts that that activity tolled the limitation period until the date on which it occurred. However, Francis does not claim, nor does it appear, that she lacked actual knowledge of the alleged ERISA violation until this activity occurred. On the con-

trary, Francis states that she contacted an attorney regarding her ERISA claims in 1996. Because the Court concludes that Francis's claims do not fall under the "fraud or concealment" provision of ERISA, the limitation period for those claims expired on "the earlier of (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date on which

750

Francis did not file her law suit, however, until over eight years later, two years after the six-year limitations period had run. Therefore, Francis's ERISA claims are time-barred.

## IV. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion of defendant The Blaikie Group to dismiss the Complaint of plaintiff Helen G. Francis pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is GRANTED.

SO ORDERED.

the plaintiff had actual knowledge of the breach or violation." 29 U.S.C. § 1113.

Since Francis had such knowledge in 1996, the limitation period expired in 1999.